## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ANNAPOLIS CITIZENS CLASS
OVERCHARGED FOR WATER-SEWER,
BY LOUDON OPERATIONS, LLC,

               Plaintiff,

               v.

STANTEC, INC., *et al.*,

               Defendants.

Civil Action No. 20–2603 (BAH)

Chief Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

This lawsuit was initiated barely four months ago but has already generated significant motion practice to regulate discovery and ensure compliance with applicable procedural rules. Several weeks after completion of all briefing on five motions, *see* Defendants Stantec, Inc., and GHD, Inc.'s motions (1) to dismiss plaintiff's Class Action Complaint ("Defs.' MTD"), ECF No. 5; (2) to strike plaintiff's class allegations contained in the Class Action Complaint ("Defs.' First Mot. to Strike"), ECF No. 6; (3) to strike portions of plaintiff's Class Action Complaint as redundant, immaterial, impertinent, and scandalous ("Defs.' Second Mot. to Strike"), ECF No. 7; (4) for sanctions stemming from an alleged factual misrepresentation in an order improperly attached to plaintiff's complaint, ("Defs.' Mot. for Sanctions"), ECF No. 10; and Plaintiff Loudon Operations LLC's (5) motion for sanctions ("Pl.'s Mot. for Sanctions"), ECF No. 22, plaintiff filed a notice of voluntary dismissal, ECF No. 25.[1]  This notice was submitted after

---

[1] This case was filed with the caption listing the plaintiff's name as "Annapolis Citizens Class Overcharged for Water-Sewer, by Loudon Operations LLC."  The complaint reveals this action is brought by "Loudon Operations LLC" as the "putative class representative" for a proposed class called "Annapolis Citizens Class Overcharged for Water-Sewer."  Compl. at 1, ECF No. 1.  Loudon Operations LLC is a subsidiary of Lillard & Lillard, P.C., the law firm of plaintiff's counsel, who serves as the firm's president. *Id.* ¶ 7.  The plaintiff Loudon Operations LLC will therefore be referred to in the singular.

plaintiff's counsel, John F. Lillard III, was ordered to show cause why he should not be sanctioned and referred for disciplinary proceedings.  Min. Order (Dec. 28, 2020).

Lillard describes himself as "your 73- year-old overcharged victim," Compl. ¶ 16, who is "an active member of the D.C. and Maryland bars, and inactive member of the New York bar, having previously practiced in Washington with Reed Smith and Department of Justice, now practicing with his wife . . . in their home/office" in Maryland, *id.* ¶ 7.  He has, through the brief history of this litigation, ignored the Federal Rules of Civil Procedure, the Local Rules, and the orders of this Court.  This has frustrated efficient proceedings, burdening both the Court and defendants with the filing and resolution of unnecessary motions.  Lillard, who has now engaged co-counsel to respond to the Court's order to show cause, *see* Pl.'s Resp. to Order to Show Cause ("Pl.'s Show Cause Resp."), ECF No. 27, concedes that he acted improperly and that some sanctions are appropriate, but asserts that most of his errors essentially amount to good-faith mistakes and do not warrant disciplinary referral.  Pl.'s Show Cause Resp. at 7–8, 13–14.

In light of plaintiff's voluntary dismissal, the case must be dismissed without reaching the merits of plaintiff's complaint or its patent jurisdictional defects.  Accordingly, defendants' two motion to dismiss and two motions to strike are denied as moot, and plaintiff's motion for sanctions is denied.  At the same time, however, this Court will direct the Clerk of the Court to send a copy of this Memorandum Opinion to this Court's Committee on Grievances and the bars of the District of Columbia and Maryland, to which Lillard says he is admitted to practice, for whatever action, if any, deemed appropriate.  Plaintiff may regret his actions now, but he showed blatant disregard for all applicable rules throughout these proceedings, wasting the time of this Court, harassing defendants, and failing to correct his improper actions when they were brought to his attention by opposing counsel and the Court.

I.      BACKGROUND

The factual background and procedural history to this matter are summarized below to inform the issue of whether sanctions are appropriately imposed in this case.

A.      Factual Background

Named plaintiff and putative class representative Loudon Operations is a Maryland-based entity and subsidiary of a District of Columbia law firm, Lillard & Lillard, P.C.  Compl. ¶ 7.[2] Plaintiff has brought claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961, *et seq.* ("RICO"), and the District of Columbia Consumer Protection Procedures Act ("CPPA"), D.C. Code §§ 28–3901, *et seq.*, on behalf of a proposed class of Annapolis, Maryland water customers called "Annapolis Citizens Class Overcharged for Water-Sewer." Compl. ¶¶ 18, 29–33.  Plaintiff alleges that the City of Annapolis, Maryland, charges "exorbitant rates" for water and sewer services and engages in "extort[ionary]" collection practices, *id.* ¶ 14, including "shutting off service and judicial sale of homeowners' property," *id.* ¶ 1.  *See also id.* ¶¶ 29–30.  Plaintiff further asserts that defendants are responsible for the City's rate-setting and collections practices through their activities as "wastewater and water treatment contractors" for the City, *id.* ¶ 1, and "incentivized" the City practices to which plaintiff objects, *id.* ¶ 4.  On the basis of this purportedly abusive rate-setting and the City's collection practices, plaintiff alleges that defendants form a racketeering enterprise with the City of Annapolis, *id.* ¶¶ 1–2, 29–31, and that the enterprise's "extortion" of water customers is a RICO predicate, *id.* ¶ 30.  Plaintiff further alleges that the defendants' "anomalous departure from common practice[] is intentional,

---

[2]      Throughout these proceedings, Lillard has referred to himself as a "*pro se* class representative," at the same time that he has entered a formal appearance in this action as counsel for plaintiff.  He cannot be both.  Rather, Lillard appears to have brought this action through the law firm that he operates with his wife, Compl. ¶ 7, and is simultaneously acting as counsel.

premeditated, unjustified . . . unconscionable, and extortionate" and that this creates liability under the CPPA.  *Id.* ¶ 30.

**B.    Procedural Background**

Despite its brief existence of four months, this case has generated multiple unnecessary filings because of plaintiff's non-compliance with the Federal Rules of Civil Procedure, the Local Rules of this Court, and the Court's orders.  Plaintiff filed its class action complaint on September 16, 2020.  A month later, on October 14, defendants moved to dismiss the complaint for lack of personal jurisdiction, lack of venue, and failure to state a claim; moved to strike plaintiff's class allegations in the complaint; and moved to strike material from the complaint as impertinent, immaterial, scandalous, and redundant.  While briefing on these motions was underway, on November 4, 2020, defendants moved for sanctions, arguing that plaintiff had falsely represented in an order attached to its complaint that the parties had agreed to a settlement, and plaintiff's counsel refused to correct the mistake when it was brought to his attention.  *See, generally* Defs.' Mot. for Sanctions; *see also* Pl.'s Notice Praecipe at 5, ECF No. 9 (objecting to defendants' request to withdraw the proposed order).

On November 11, 2020, defendants filed a motion to quash a subpoena that plaintiff had attempted to serve on a former Stantec executive to compel him to appear at a deposition, Defs.' Mot. to Quash Subpoena of Ron Triffo ("Defs.' Mot. to Quash"), ECF No. 11, and a motion to stay discovery in response to that improper discovery request, Defs.' Mot. to Stay Disc., ECF No. 12.  The Court granted defendants' motions, quashing the subpoena and staying discovery because plaintiff's actions were improper and premature under Federal Rule of Civil Procedure 26(d)(1).  Min. Order (Nov. 12, 2020).

On November 19, 2020, plaintiff filed an omnibus memorandum in opposition to the defendants' motion to dismiss, motions to strike, motion for sanctions, as well as the already-

granted motions to quash and to stay discovery.  Pl.'s Counter-Motion for Sanctions Against
Defense and Global Points and Auths. in Opp'n to Defs.' Mots. ("Pl.'s Opp'n"), ECF 13.  This
opposition motion included a "counter-motion for the defense having moved frivolously for
sanctions," *id.* at 4, though it also included references to "abusive" actions in a related action
before the D.C. Circuit that plaintiff hypothesized "should . . . be sanctioned,"[3] and made general
accusations of "vexatious harassment" by opposing counsel, *id.* at 10.  In reply, defendants noted
that plaintiff's sanctions motion failed to comply with Federal Rule of Civil Procedure 11(c)(2)
because it was not (1) made separately from any other motion and (2) was not served on
defendants' in advance.  Defs.' Reply Mem. at 4–5, ECF No. 19.  Plaintiff then filed, without
required leave from the Court, a surreply emphasizing that "counsel's rodomontade of unseemly
filings needs scrutiny and potential sanction."  Pl.'s Surreply at 9, ECF No. 21.

Plaintiff's sanctions motion was struck as improper for failing to comply with Rule 11, as
was plaintiff's surreply for failing to obtain leave of the Court. Min. Order (Dec. 1, 2020); *see
also* Standing Order ¶ 5(b), ECF No. 3 ("A party may not file a sur-reply without first obtaining
leave of the Court and may do so only upon a specific showing of good cause.")  Plaintiff was
further cautioned to comply with applicable Federal and Local Rules.

---

[3]     Plaintiff previously brought a petition under Federal Rule of Civil Procedure 27 to perpetuate testimony
related to this matter.  *Annapolis Citizens Class Overcharged for Water-Sewer v. Stantec*, Misc. Action No. 20–9
(EGS) (D.D.C. Feb. 13, 2020), ECF No. 1; *see also* Compl. ¶ 16 (referencing filing and dismissal of "Miscellaneous
action under Rules 27 and 16, . . . for which an appeal was filed in the D.C. Circuit, where pending is your Plaintiff
putative class representatives' motion for summary reversal.").  That petition was denied by another Judge on this
Court because Loudon Operations' own statements "confirm[ed] that it intends to use the [requested] depositions for
improper purposes."  Mem. and Order, *Annapolis Citizens*, Misc. Action No. 20–9. (D.D.C. June 3, 2020), ECF No.
27 at 4.  The denial of this petition is currently on appeal in the D.C. Circuit.  *Annapolis Citizens Class Overcharged
for Water-Sewer v. Stantec*, Case No. 20-7052 (D.C. Cir.).  Notably, plaintiff's counsel failed, when filing the
complaint in this action, to indicate that it was related to any pending civil or miscellaneous case, *see* Civil Cover
Sheet, ECF No. 1-1, highlighting yet another failure to follow an applicable procedural rule requiring such notation
when two cases are pending that "grow out of the same event or transaction,"  LCvR 40.5(a)(3).  The Court also
observes that Lillard was also admonished by Judge Sullivan, the presiding judge in that case, for attempting
inappropriate ex parte communication with Chambers.  Min. Order (May 12, 2020), *Annapolis Citizens*, Misc.
Action No. 20-9 (D.D.C.).

Failing to heed the Court's warning, plaintiff filed yet another motion for sanctions two days later, without citing any legal basis for sanctions or complying with the procedural requirements of Rule 11.

The Court then ordered Lillard to show cause why he should not be (1) "sanctioned pursuant to Rule 11(c) of the Federal Rules of Civil Procedure for certifying a motion for sanctions as 'warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law,' FED. R. CIV. P. 11(b)(2), when that "motion entirely lacked legal authority to suggest that defendants' conduct is sanctionable under any procedural, professional, or statutory rule and after plaintiff's counsel had been alerted to the procedural prerequisites for filing a sanctions motion by both defense counsel and the Court"; (2) "sanctioned pursuant to Rule 26(g)(3) of the Federal Rules of Civil Procedure for certifying a subpoena, as 'consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law,' FED. R. CIV. P. 26(g)(1)(B)(i), when the request was a procedurally improper request for a pre-conference deposition without leave of the Court"; and (3) "referred to the bar associations of which he is a member for his conduct referenced above, in ¶¶ 1 and 2, and for violating Rule 4.2(a) of the District of Columbia Code of Professional Responsibility by attempting to 'cause another to communicate about the subject of the representation with a person known to be represented by another lawyer in the matter' through the letter in which he requested the addressee to 'arrange for another representative to call [him] to negotiate.'"  Min. Order (Dec. 28, 2020) (internal citations omitted).

As noted, plaintiff then voluntarily dismissed the case without prejudice, and newly recruited counsel made an appearance to file a response to the Court's order to show cause on behalf of Lillard.

## II.   VOLUNTARY DISMISSAL AND MOTION TO DISMISS

Plaintiff's notice of voluntary dismissal, defendants' motion to dismiss, and defendants' motions to strike are addressed first before discussing whether sanctions should be imposed on plaintiff's counsel.

### A.   Voluntary Dismissal

Plaintiff has filed a notice of voluntary dismissal without prejudice.  This action must be dismissed without prejudice because defendants have not yet answered plaintiff's complaint or filed a motion for summary judgment.  FED. R. CIV. P. 41(a)(1)(A)(i).

### B.   Motion to Dismiss and Personal Jurisdiction

Even without the voluntary dismissal, this case would have been dismissed without prejudice because plaintiff failed to make a colorable argument for personal jurisdiction.  While not necessary to the dismissal of this case given plaintiff's voluntary dismissal, analysis of the jurisdictional defect in this case and plaintiff's responses highlights how plaintiff failed to put forward any meritorious legal arguments necessary to confront the motion to dismiss.

#### 1.   *Legal Standard*

Personal jurisdiction is 'an essential element of the jurisdiction of a district . . . court,' without which the court is 'powerless to proceed to an adjudication.'" *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1086 (D.C. Cir. 2007) (quoting *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)).  To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff must "make a *prima facie* showing of the pertinent jurisdictional facts." *Livnat v. Palestinian Auth.*, 851 F.3d 45, 56–57 (D.C. Cir. 2017) (quoting

*First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1378 (D.C. Cir. 1988)).  The *prima facie* showing requires specific factual allegations connecting each defendant to the forum.  *First Chicago Int'l*, 836 F.2d at 1378.  Conclusory statements and bare allegations are insufficient. *Livnat,* 851 F.3d at 57.  Unlike on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction."  *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (citing *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).  Indeed, jurisdictional arguments may be premised on the "pleadings, bolstered by such affidavits and other written materials as [the parties] can otherwise obtain."  *Mwani v. bin Laden*, 417 F.3d 1, 7 (D.C. Cir. 2005).

### 2. *Discussion*

Defendants sought dismissal of this case for lack of personal jurisdiction, under Federal Rule of Civil Procedure 12(b)(2).[4]  Determining whether personal jurisdiction exists over the defendants in this case is a "two-part inquiry."  *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000).  The Court must, first, look to the relevant statute to determine the scope of jurisdiction it confers and, second, determine whether the exercise of jurisdiction comports with constitutional limitations under the Due Process Clause of the Fourteenth Amendment.  *Forras v. Rauf*, 812 F.3d 1102, 1106 (D.C. Cir. 2016) (citing *GTE New Media Servs. Inc.*, 199 F.3d at 1347); *see also* U.S. CONST. amend. XIV, § 1.  A federal court has jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction

---

[4]     Defendants also sought dismissal for lack of venue under Federal Rule of Civil Procedure 12(b)(3), and for failure to state a claim under Rule 12(b)(6), *see* Defs.' MTD at 3–4.  Plaintiff similarly failed to respond substantively to many of these alternative grounds of dismissal.  For example, plaintiff provided no reason to believe that the District of Columbia's CPPA statute would apply in this action, where all of the relevant conduct, injuries, and transactions allegedly occurred in Maryland.  *See* Defs.' MTD at 20–21.

in the state where the district court is located." FED. R. CIV. P. 4(k)(1)(A).  Thus, if a court of the

District of Columbia could exercise jurisdiction over the defendants, within constitutional limits,

so too can this Court.

Courts may exercise two types of jurisdiction over non-resident defendants: general

jurisdiction or specific jurisdiction.  General jurisdiction is all-purpose, "permit[ting] a court to

assert jurisdiction over a defendant based on a forum connection unrelated to the underlying

suit." *Livnat*, 851 F.3d at 56 (quoting *Walden v. Fiore*, 571 U.S. 277, 283 n.6 (2014)).  Specific

jurisdiction is narrower.  It "requires an 'affiliation between the forum and the underlying

controversy.'" *Id.* (quoting *Walden*, 571 U.S. at 283 n.6 (alternation omitted)).  The scope of the

constitutional limitations on personal jurisdiction depends on which kind of jurisdiction a court

will exercise.

Three statutory provisions of the D.C. Code are relevant in determining whether a local

court may exercise personal jurisdiction over a defendant in the District of Columbia.  The first,

D.C. Code § 13–422, grants general jurisdiction by permitting a local court to "exercise personal

jurisdiction over a person domiciled in, organized under the laws of, or maintaining his or its

principal place of business in, the District of Columbia."  The second provision, D.C. Code § 13–

334(a), grants general jurisdiction over "foreign corporations doing business in the District" who

have been served within the District.[5]  The third provision, D.C. Code § 13–423, is the District's

long-arm statute and provides specific jurisdiction for claims arising from a defendant's activities

in the District or from injuries that occur in the District.

---

[5]       "Although on its face § 13–334(a) appears only to specify proper methods of service, the District of
Columbia Court of Appeals has held that compliance with the statute gives rise to personal jurisdiction over a
foreign corporation doing business in the District." *Gorman v. Ameritrade Holding Corp.*, 293 F.3d 506, 509 n.1
(D.C. Cir. 2002) (citing *AMAF Int'l Corp. v. Ralston Purina Co.*, 428 A.2d 849, 850 (D.C. 1981)).

Plaintiff neither identified the specific statutory basis for personal jurisdiction asserted nor described whether defendants were subject to general or specific jurisdiction in the District of Columbia, alleging only that "[a]t all times relevant hereto, Defendants Stantec and GHD were foreign companies licensed to transact and transacting insurance business in the District of Columbia and other states."  Compl. ¶ 13.  In opposing defendants' motion to dismiss, plaintiff further alleged that "Stantec and GHD do business in this jurisdiction, [Stantec has offices in Washington, D.C., and] both have registered agents in Washington, D.C."  Pl.'s Opp'n at 11; *see also* Compl. ¶ 13 (asserting that defendants "regularly and continuously conduct business in interstate commerce that is carried out in part in this District, and/or have offices and registered agents in our jurisdiction").[6]

Plaintiff cited no caselaw to support his position that his allegations were sufficient to establish personal jurisdiction.  Instead, plaintiff recited facts about defendants' minimal presence in the District and referred to their entirely valid defense as "specious" and "vexatio[u]s."  Pl.'s Opp'n at 13.  In a truly bizarre line of argument, plaintiff's counsel then cited to his own and his law firm's personal and ancestral ties to the District of Columbia as a basis for jurisdiction:

> Overcharged Annapolitans are putatively represented *pro se* by fellow overcharged victims, Annapolis citizens John and Laura Reimer Lillard, through Loudon Operations LLC, whose Lillard & Lillard, P.C. law firm was incorporated in the District of Columbia in 1977 with a D.C. office, whose progenitor patent lawyer, Mr. Lillard's great-great uncle Edgar Gaddis, lived and practiced law on Capitol Hill until his death at 102. Mr. Lillard's son and father were born in D.C., where his father was graduated from Sidwell Friends School and Mr. Lillard from St. Albans, establishing a rather solid nexus of D.C. heritage and jurisdictional connection.

---

[6]   Plaintiff provides no factual allegations as support for assertions regarding GHD's business presence in the District of Columbia, instead asserting that GHD has a "suburban headquarters" in Bowie, Maryland.  Pl.'s Opp'n at 13.  Thus, the more concrete factual allegations plaintiff provides regarding Stantec are the focus of this analysis.

*Id.*  A plaintiff's ties to the district—let alone those of his a "great-great uncle"—are immaterial to the issue of a court's personal jurisdiction over a defendant.  This is only one of multiple instances in the course of this litigation in which plaintiff's counsel has advanced frivolous arguments devoid of any basis in law.

Defendants correctly argued that plaintiff cannot establish personal jurisdiction under any of the three applicable statutes because (1) plaintiff has made no assertion that either defendant is domiciled in, organized under the law of, or maintains its principal place of business in the District of Columbia to confer jurisdiction under D.C. Code § 13–422, Defs.' MTD at 24; (2) plaintiff has not alleged facts establishing that either defendant does "consistent business within the District" to confer jurisdiction under D.C. Code § 13–334(a), Defs.' MTD at 24–25; and (3) plaintiff's allegations concern conduct exclusively carried out in Maryland rather than the District of Columbia, so the long-arm statute does not apply, Defs.' MTD at 25.  Given plaintiff's acknowledgement that defendants are foreign corporations and description of all relevant activity as occurring outside of the forum, Compl. ¶¶ 14–17, plaintiff's only plausible argument for personal jurisdiction in the District of Columbia courts was general jurisdiction over foreign corporations, pursuant to D.C. Code § 13–334.

Yet, plaintiff did not come close to carrying its burden of establishing general personal jurisdiction.  Defendants observed that plaintiff provided few factual allegations to suggest that defendants have a significant presence in the District and instead relied on conclusory allegations, Defs.' MTD at 24–25, though plaintiff at least alleges that Stantec has an office in the District, Pl.'s Opp'n at 13.  Regardless of the precise scope of defendants' presence, however, such presence does not reach what the Supreme Court has required to establish general jurisdiction consistent with due process.

The D.C. Circuit, following the D.C. Court of Appeals, "has indicated that the reach of 'doing business' jurisdiction under § 13–334(a) is co-extensive with the reach of constitutional due process," *FC Inv. Grp. LC v. IFX Markets, Ltd.*, 529 F.3d 1087, 1092 (D.C. Cir. 2008) (quoting *Gorman*, 293 F.3d at 510), but the bar for establishing all-purpose general jurisdiction is high. The exercise of general jurisdiction is only appropriate over a foreign corporation where the corporation's "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. at 919. For a corporation, the paradigmatic fora in which a corporation is "at home . . . are the corporation's place of incorporation and its principal place of business. *BNSF Ry. Co. v. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (citing *Daimler*, 571 U.S. at 137); *see also Goodyear*, 564 U.S. at 924 (citing Lea Brilmayer, Jennifer Haverkamp, and Buck Logan, *A General Look at General Jurisdiction*, 66 Texas L. Rev. 721, 728 (1988)).

Over the past decade, the Supreme Court has repeatedly held that merely having a significant business presence in a forum is insufficient to render a corporation "at home" for purposes of due process. "[T]he general jurisdiction inquiry does not focus solely on the magnitude of the defendant's in-state contacts [because a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler* 571 U.S. at 131 n.20. After all, the contacts that traditionally render a corporation at home in a forum—the corporation's place of incorporation and its principal place of business—"have the virtue of being unique . . . as well as easily ascertainable." *Daimler*, 571 U.S. at 137. Applying these principles, the Court held in *Daimler* that having "multiple facilities" in a forum, including a "regional office" was insufficient to establish general personal jurisdiction. *Id.* at 123, 136–37. Similarly, in *BNSF Ry. Co. v. Tyrrell*, the Court held that the railroad defendant was not subject to general personal

jurisdiction in Montana even though it had "over 2,000 miles of railroad track and more than 2,000 employees" in the state.  137 S. Ct. at 1559.

Outside of the two paradigmatic bases for general jurisdiction—place of incorporation and principal place of business—a corporation can only be considered "at home" in another forum in the "exceptional case."  *Daimler*, 571 U.S. 117, 137 (2014).  As *Daimler* and *BNSF* show, such an exceptional case requires more than even a substantial business presence—it requires truly unusual circumstances creating a new "home" for the corporation.  In *Daimler*, the Supreme Court favorably cited *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952), as providing such a case.  There, where a foreign corporation was "temporarily relocate[d]" to the United States during wartime and established a center of operations in a state, the corporation could fairly be subjected to general jurisdiction in the state to which it had relocated.  *Daimler*, 571 U.S. at 129 (citing *Perkins*, 342 U.S. at 448); *see also BNSF Ry. Co.*, 137 S. Ct. at 1559 (discussing *Perkins*).

Here, defendants' contacts in the forum are clearly insufficient to establish general jurisdiction.  As described above, plaintiff acknowledged that neither defendant is incorporated in the District of Columbia or has its principal place of business in the District of Columbia.  Plaintiff alleged only that defendants do business in the District, that Stantec has an office in the District, and that each defendant has agents in the district.  Pl.'s Opp'n at 11–13; *see also* Compl. ¶ 13.  These ties to the forum are substantially weaker than those the Supreme Court rejected in *Daimler* and *BNSF*, and do not come remotely close to establishing the "exceptional case" where a defendant may be subject to general jurisdiction in a forum outside of the paradigmatic cases of incorporation and principal place of business.  Nor do plaintiff's allegations remotely support a basis for specific jurisdiction given that all events relevant to the action appear to have taken

place in Maryland.  Thus, even if plaintiff had not voluntarily dismissed the case, his arguments for personal jurisdiction border on frivolous—he invokes virtually no legal authority to support his assertion of personal jurisdiction.  Indeed, plaintiff's brief makes clear that the action was brought in the District of Columbia in a misguided attempt at forum-shopping.  *See id.* at 11 ("The venue argument is typical, but we Annapolitans cannot be protected by D.C. consumer law in a Maryland court.").

In light of plaintiff's voluntary dismissal, defendants' motion to dismiss and motions to strike are denied as moot.[7]

## III.   SANCTIONS AND DISCIPLINARY REFERRAL

The Court may reach the issue of sanctions even where it does not have jurisdiction over the underlying action or where the action has been voluntarily dismissed.  *Willy v. Coastal Corp.*, 503 U.S. 131, 137 (1992) (citing *United States v. United Mine Workers*, 330 U.S. 258 (1947)); *In re LeFande*, 919 F.3d 554, 561 (D.C. Cir. 2019); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395 (1990).  Here, four matters related to sanctions will be addressed.  First, defendants have moved for sanctions under Rule 11 in connection with a proposed order attached to the complaint.  Defs.' Mot. for Sanctions at 1–2.  Second, plaintiff's counsel, John F. Lillard III, filed a facially defective and procedurally improper motion for sanctions, even after he had been cautioned that continued filing of improper papers could lead the Court to issue a show cause order and consider imposing sanctions under Rule 11.  *See* Pl.'s Mot. for Sanctions at 1; *see also*

---

[7]     Defendants ask that the complaint be dismissed *with* prejudice, Defs.' MTD at 25, but the Court cannot reach the merits of the case given that plaintiff has filed a notice of voluntary dismissal before defendants answered or filed a motion for summary judgment.  FED. R. CIV. P. 41(a)(1)(A)(i).  Moreover, even if plaintiff had not voluntarily dismissed the case, dismissals for lack of personal jurisdiction are always without prejudice.  *Shatsky v. Palestine Liberation Org.*, 955 F.3d 1016, 1038 (D.C. Cir. 2020) (citing *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1192 (D.C. Cir. 1983)).  Initially, defendants could have waived personal jurisdiction to get a final adjudication on the merits, FED. R. CIV. P. 12(h)(1), but instead raised the defense in their motion to dismiss, requiring this jurisdictional ground for dismissal to be considered first.

14

Min. Order (Dec. 1, 2020) (citing Fed. R. Civ. P. 11(c)).  Third, defendants have brought to the
Court's attention potentially sanctionable behavior in discovery, *see* Defs.' Mot. to Quash
Subpoena, which the Court may address on its own, Fed. R. Civ. P. 26(g), after plaintiff's
counsel was given the opportunity to respond to the Court's Order to Show Cause.  Fourth,
defendants raised a potential violation of Rule 4.2(a) of the District of Columbia Rules of
Professional Conduct ("D.C. RPC").  Defs.' Mem. of Points and Auths. Supp. Def.'s Mot. to
Quash Subpoena of Ron Triffo ("Defs.' Mem. Supp. Mot. to Quash") at 6–7, ECF No. 11-1.
Each of these matters will be addressed in turn after a review of the relevant legal standards.

### A.    Applicable Legal Standards

Federal Rule of Civil Procedure 11 requires that whoever submits pleadings, written
motions, and other papers to the district court sign those documents.  *See* Fed. R. Civ. P. 11(a).
By signing and submitting such documents, a lawyer certifies "to the best of the person's
knowledge" based upon "an inquiry reasonable under the circumstances," the document being
filed merits consideration by the court.  *Id.* 11(b).  Rule 11 specifically provides that the
signatory makes the following representations about the filing:

(1) it is not being presented for any improper purpose, such as to harass, cause
unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a
nonfrivolous argument for extending, modifying, or reversing existing law or for
establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will
likely have evidentiary support after a reasonable opportunity for further investigation
or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so
identified, are reasonably based on belief or a lack of information.

FED. R. CIV. P. 11(b)(1)–(4).  Thus, Rule 11 "requires that an attorney conduct a reasonable inquiry into the factual and legal basis for a claim before filing." *Miller v. Bittner*, 985 F.2d 935, 939 (8th Cir. 1993) (citation omitted).

Rule 11(c)(1) provides that the court may impose an appropriate sanction on an attorney "[i]f after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated." FED. R. CIV. P. 11(c)(1).  A party may file a motion for sanctions, or the court may order an attorney to show cause why its specifically described conduct has not violated Rule 11(b). FED. R. CIV. P. 11(c)(2)–(3).   The purpose of the Rule 11 requirements and accompanying sanctions is "to deter baseless filings in district court" and "streamline the administration and procedure of the federal courts." *Cooter & Gell.*, 496 U.S. at 393.  "Rule 11 sanctions are harsh punishment intended for those who frustrate judicial proceedings." *Cauderlier & Assocs., Inc. v. Zambrana*, 463 F. Supp. 2d 63, 64 (D.D.C. 2006).

Factors to consider in determining whether to impose a sanction under Rule 11, or what sanction to impose, include:

> Whether the improper conduct was willful, or negligent; whether it was part of a pattern of activity, or an isolated event; whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in time or expense; whether the responsible person is trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; what amount is needed to deter similar activity by other litigants.

FED. R. CIV. P. 11 advisory committee's note to 1993 amendment.  "A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated." FED R. CIV. P. 11(c)(4).  District courts have broad discretion to tailor sanctions to this purpose. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).

Federal Rule of Civil Procedure 26(g) establishes a similar system for discovery requests. That rule requires that every discovery request be signed and provides that the signatory make the following representations about the request:

> (1) [that it is] consistent with these [the Rules] and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law;
>
> (2) [that it is] not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and
>
> (3) [that it is] neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

FED. R. CIV. P. 26(g)(1)(B)(i)–(iii).  "If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both.  The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation."  FED. R. CIV. P. 26(g)(3).  As with the requirement of Rule 11, "[t]he duty to make a 'reasonable inquiry' is satisfied if the investigation undertaken by the attorney and the conclusions drawn therefrom are reasonable under the circumstances."  FED. R. CIV. P. 26 advisory committee's note to 1983 amendment. Unlike Rule 11 sanctions, however, Rule 26(g) sanctions are not discretionary: the court "*must* impose an appropriate sanction" where the Rule has been violated.  FED. R. CIV. P. 26(g)(3) (emphasis added); *see also Rojas v. Town of Cicero, Ill.*, 775 F.3d 906, 909 (7th Cir. 2015).

B.      **Analysis**

Defendants' motion for sanctions will be discussed first, followed by plaintiff's improper

motion for sanctions, and then plaintiff's conduct in improperly seeking pre-conference

discovery and potential violation of the Rules of Professional Conduct.[8]

1.      ***Defendants' Motion for Sanctions***

Defendants' motion for sanctions is predicated on an alleged misrepresentation made in a

proposed order attached to plaintiff's complaint.  Defs.' Mot. for Sanctions at 1–3.  The

"Proposed Order Certifying Class and Preliminary Approval of Class Settlement," ECF No. 1-4,

attached to the complaint states that "the parties jointly move for preliminary approval of a class

settlement."  *Id.* at 1.  According to defendants, the parties have not entered into settlement

negotiations, let alone agreed to settle, submitted a settlement agreement, or jointly filed any

motion subject to Court approval.  Defs.' Mot. for Sanctions at 4–5.  Instead, defendants moved

to dismiss plaintiff's defective complaint.  Defendants requested that the proposed order be

withdrawn, but plaintiff refused.  *Id.*; Pl.'s Notice Praecipe at 1–2; *see also* FED. R. CIV. P.

11(c)(2) (requiring party requesting sanctions to present motion to opposing party before filing

with the court).

According to defendants, this statement about the parties jointly moving for preliminary

approval of a class settlement—and indeed the entire premise of the proposed order—constitutes

a material factual misrepresentation to the Court in violation of Rule 11(b)(3).  Defs.' Mot. for

Sanctions at 4. (citing FED. R. CIV. P. 11(b)); *see also id.* (citing D.C. RPC 3.3(a)(1) ("A lawyer

shall not knowingly [m]ake a false statement of fact or law to a tribunal.")).  Defendants argue

that these misrepresentations were made to "mislead the Court into believing that a settlement

---

[8]      Lillard is referenced by name throughout this section when referring to actions for which he personally
faces sanctions.

agreement had already been reached between the parties," *id.* at 5, and that sanctions are therefore appropriate.  Plaintiff responds that the order was not intended to be entered immediately and, indeed, did not contain the details of any settlement, but was presented to express what plaintiff hoped to achieve, at some point in the future in the litigation.  Pl.'s Opp'n at 8–9.  Plaintiff further suggests that a proposed order is not the kind of "claim" subject to Rule 11.  *Id.*

Although filing the proposed order at issue was clearly improper, the Court will not find this filing sanctionable under Rule 11, given the procedural posture at the initiation of the lawsuit when the filing was made and because the filing was so deficient that no judicial officer reading it would credit the factual assertions contained therein.  The proposed order was filed with the complaint, before defendants had made any appearance in the case, and before any actual settlement agreement had been provided to the Court.  The proposed order was accompanied by an attached "Motion to Certify Class and for Preliminary Approval of Class Settlement," but the brief text of the "motion," which, as noted, was submitted as an attachment to a complaint rather than actually filed as an entry on the docket, does not request the approval of a settlement, nor describe any alleged settlement between the parties.

Thus, Lillard filed a bizarre and procedurally improper wish-list describing his preferred outcome for the litigation that contained material misrepresentations, but, in context, did no harm.  This is undoubtedly poor practice on the part of Lillard, and a violation of the Local Rules of this Court.  *See* LCvR 5.1(e) ("No complaint, amended complaint, counterclaim, cross claim or third-party complaint shall have appended thereto any document that is not essential to

determination of the action.").  This filing does not, however, violate Rule 11, so defendants'

motion for sanctions—which is predicated only on the proposed order—is denied.[9]

## 2.  *Plaintiff's Motion for Sanctions*

Plaintiff's motion for sanctions, in effect, argues that defendants' reasonable attempts to

dismiss the action and criticisms of plaintiff counsel's advocacy are sanctionable.  Pl.'s Mot. for

Sanctions at 1–2, 4.  The grounds for the requested sanctions are not entirely clear, but plaintiff

appears to take issue with the defendants' (1) reference to Lillard's disciplinary history in

arguing that Louden Operations is an inappropriate class representative, Defs.' First Mot. to

Strike at 12 (citing *Matter of Lillard*, 255 A.D.2d 88 (N.Y. App. Div. 1999), and *In re Lillard*,

724 A.2d 604 (D.C. 1999))[10]; and (2) communication with a lawyer who Lillard represented was

"stand[ing] ready" and might take over after class certification to obviate the conflict of interest

of Lillard acting as both class representative and class counsel, *id.* at 14–16.[11]  Plaintiff

essentially just refiled his earlier stricken surreply as a motion for sanctions, despite failing to

present any legal authority to suggest that defendants' conduct is sanctionable under any

procedural, professional, or statutory rule.

Furthermore, to the extent that plaintiff's motion is predicated on Rule 11, it fails to

comply with Rule 11(c)(2), which requires that a motion for sanctions be served on the opposing

party under Rule 5, and that a motion for sanctions may not be filed until 21 days after service.

FED. R. CIV. P. 11(c)(2).  Plaintiff does not indicate in this motion that such service was made,

---

[9]    Despite prevailing on this motion, plaintiff is not entitled to fees, *see* Pl.'s Opp'n at 4, since defendants' motion was neither frivolous nor filed for an improper purpose, and was driven by plaintiff's refusal to retract an improper and potentially confusing filing.

[10]   Lillard's censure "stemmed from his unauthorized representation of an individual, despite the individual's explicit communications that he did not want respondent to represent him."  *In re Lillard*, 724 A.2d at 604 n.1.

[11]   This lawyer represented to defendants that he had no communication whatsoever with Lillard regarding this action.  Defs.' Reply at 6–7.

and defendants have indicated that they did not receive any notice prior to the filing of plaintiff's motion.  Defs.' Opp'n to Pl.'s Mot. for Sanctions, ECF No. 23.

Plaintiff's earlier motion for sanctions against defendants, Pl.'s Opp'n at 4, was struck because (1) it was embedded in its omnibus opposition motion, in violation in Rule 11(c)(2), which requires a separate filing for Rule 11 motions, and (2) defendants were not served with a draft motion as required by Rule 11(c)(2).  Min. Order (Dec. 1, 2020); *see also* Defs.' Reply at 4–5 (arguing that the motion for sanctions was improper on these grounds).  Plaintiff was further cautioned "that continued failure to comply with the Federal Rules of Civil Procedure and Local Rules may prompt the Court to order plaintiff 'to show cause why [its] conduct has not violated Rule 11(b),' FED. R. CIV. P. 11(c)(3), and expose plaintiff to sanctions."  Min. Order (Dec. 1, 2020).

Lillard claims that he has "attempt[ed] to comply" with the Minute Order, Pls.' Mot. for Sanctions at 1–2, but this assertion strains credulity given the clear instructions of the Court, the plain text of Rule 11(c)(2), and the complete absence of any legal authority supporting the imposition of sanctions.  The natural inference from Lillard's lack of compliance with the Federal Rules of Civil Procedure and the lack of legal authority is that Lillard did not engage in "an inquiry reasonable under the circumstances" that the "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  FED. R. CIV. P. 11(b)(2).  Indeed, he presents no support for his request for sanctions, so it is difficult to see how he could conceivably have determined that the "legal contentions are warranted" as required by Rule 11(b)(2).  Nor is this the first time that Lillard has filed meritless sanctions motions in this District, *see Cooper v. Farmers New Century Ins. Co.,* 607 F. Supp. 2d 175, 180 (D.D.C. 2009) ("The Court easily dispenses with Plaintiffs'

[i.e., Lillard's] motion for sanctions, as it is entirely without merit."), or defied court orders, *id.* at 178 ("Plaintiffs failed to file any response to the Court by January 30, 2009, in direct violation of the Court's December 29, 2008 and January 16, 2009 Orders").[12]

The Court ordered Lillard to show cause why this second motion for sanctions should not itself be found to violate Rule 11(b)(2).  Min. Order (Dec. 28, 2020).[13]  In responding to the show cause order, Lillard has defended his *first* motion for sanctions embedded in his omnibus opposition, not in the *second* motion for sanctions that was the subject of the Court's order to show cause.  Pl.'s Resp. to Order to Show Cause at 6.  Plaintiff's second motion for sanctions was made without *any* legal authority or legal basis and failed to present any reason to believe that defendants' actions were sanctionable or at all unprofessional.  Like the motion in *Cooper*, it was "entirely without merit."  Given the Court's warning and the totality of Lillard's conduct, the Court finds he did not make "an inquiry reasonable under the circumstances" that the "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  FED. R. CIV. P. 11(b)(2).

Accordingly, plaintiff's motion for sanctions is denied, and Lillard is admonished for filing his second motion for sanctions in contravention of Rule 11(b)(2).  Filing a single frivolous or legally unsupported motion might not usually warrant sanctions, but for Lillard, who has repeatedly flouted the applicable procedural rules and throughout this litigation shown a distinct lack of interest in supporting his claims with legal authority, the Court determines that sanctioning under Rule 11(c)(1) and formal admonishment are appropriate to deter Lillard from

---

[12]    Without weighing in on the merits of motions in other litigation, the Court notes that Lillard also filed motions for sanctions in the earlier action to perpetuate testimony and in the appeal of that action.  Pet.'s Request for Sanctions Against City of Annapolis, *Annapolis Citizens,* Misc. Action No. 20-9 (EGS) (D.D.C. Feb. 13, 2020), ECF No. 22; Pet.'s Combined Opp'n to Motion to Dismiss as Moot and Mot. for Sanctions, *Annapolis Citizens,* Case No. 20–7052 (D.C. Cir. Nov. 25, 2020).
[13]    Defendants suggested in their opposition to plaintiff's motion that an order to show cause would be appropriate.  Defs.' Opp'n Pl.'s Mot. for Sanctions at 2.

taking similar actions in the future.  Though the Court is referring Lillard for disciplinary proceedings primarily on the basis of his discovery misconduct, his improper sanctions motion may warrant consideration in assessing his professional misconduct and in determining the appropriate remedy.

### 3.     *Plaintiff's Discovery Request*

Most concerning are Lillard's actions in discovery.  Lillard served a facially defective and premature subpoena to compel Ron Triffo, a former Stantec executive, to testify at a deposition.  Defs.' Mem. Supp. Mot. to Quash at 3–6; Def.'s Mot. to Quash, Ex. A ("Letter and Subpoena"), ECF No. 11-2.  Defendants moved to quash, arguing that the subpoena was improper because (1) Triffo is a foreign national beyond the subpoena power of the Court, *see* Def.'s Mot. to Quash at 4 (citing 28 U.S.C. § 1783 and *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993)); (2) the subpoena provided a deposition date *before* the subpoena was delivered, *id.* (citing Letter and Subpoena at 2); (3) plaintiff sought to engage in discovery before the parties had conferred in a Rule 16 discovery planning conference, in violation of Federal Rules of Civil Procedure 26(d) and 30(a), *id.* at 5; *see also* Def.'s Mot. to Stay Disc.; and (4) plaintiff failed to obtain defendants' consent for the deposition as required by Rule 30(b), Defs.' Mot. to Quash at 6; Defs.' Mot. to Quash, Ex. B ("Defs.' Letter to John Lillard") at 1, ECF. No. 11-3.

Before filing their motions to quash and to stay discovery, defendants sent a letter to Lillard informing him of the above defects in the subpoena and requesting that he withdraw the subpoena.  Defs.' Letter to John Lillard at 1.  Lillard never responded.  Defs.' Mem. Supp. Mot. to Quash at 2.

Defendants' motion to quash the subpoena was granted and the parties were ordered to comply with Rule 26(d), noting that plaintiff's attempts to seek pre-conference discovery were plainly improper, and ordering the parties to make no further discovery efforts pending resolution of defendants' motion to dismiss.  Min. Order (Nov. 12, 2020).[14]  While the Court only cited Rule 26(d) in quashing the subpoena, defendants' other three bases for quashing the subpoena were clearly correct given the text of the subpoena and defendants' representation that they were not provided notice.  It is difficult to believe that Lillard could have determined "after a reasonable inquiry" that the discovery request was "consistent with these rules and warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law, or for establishing new law."  FED. R. CIV. P. 26(g)(1).

When ordered to show cause, Lillard conceded that the issuing of the subpoena before a Rule 26(f) conference was improper without leave of the Court and that he could not show "substantial justification" for the error.  Pl.'s Show Cause Resp. at 8; *see also id.* at 8 n.3 (conceding the other procedural defects of the subpoena).  He explained that he is "reflexively" defaulted to the Maryland Rules of Civil Procedure, with which he was more familiar because his "practice consists of negotiating the resolution of personal injury claims with insurers and rarely filing in Maryland state Courts," and that he usually "refers litigation matters to experienced and competent trial lawyers."  *Id.* at 8 (citing *id.*, Ex. 1 ("Lillard Decl.") ¶ 12, ECF No. 27-1).  Here, Lillard said that he "filed the instant case as both a plaintiff and on behalf of prospective class with the expectation that, if the case could not be promptly resolved via

---

[14]     In their memorandum supporting their motion to quash, defendants requested in passing fees associated with the filing of the motion.  Def.'s Mem. Supp. Mot. to Quash at 7.  Defendants did not provide a basis for that request, however, nor included that request for relief in the motion itself or proposed order and, consequently, this fee request was not granted in the order granting defendants' motion and quashing the subpoena.  Min. Order (Nov. 12, 2020).

settlement, [he] would associate experienced class counsel." *Id.* at 9 (citing Lillard Decl. ¶ 13). Lillard further acknowledges that "he is in over his head, is voluntarily dismissing this action and will not refile it, in this court or elsewhere, unless and until he has competent co-counsel to assist him." *Id.* at 13.

This explanation frames the present litigation and the improper discovery attempt as a one-off mistake by someone who made a few good-faith errors due to lack of experience and a brief exercise of poor judgment. This does not accurately portray the present proceedings or Lillard's history with this Court. Lillard has *regularly* litigated in this District. As described earlier, Lillard brought a petition under Rule 27 to perpetuate testimony in this case. *See Annapolis Citizens*, Misc. Action No. 20-9 (EGS) (D.D.C. Feb. 13, 2020). Eight years ago, he brought claims under the CPPA and RICO in D.C. Superior Court, and that case was removed to this District before being dismissed for lack of standing. *See Lillard & Lillard, P.C. v. Blue Cross & Blue Shield Ass'n,* 971 F. Supp. 2d 116, 117 (D.D.C. 2013). Lillard litigated another removed CPPA case in this District in 2009 that was eventually dismissed after Lillard "fail[ed] to directly address *any* of [the opposing party's] arguments presented in its supplemental briefing." *Cooper*, 607 F. Supp. 2d at 178 (emphasis in original). Lillard has also recently filed another petition to perpetuate testimony in a proposed CPPA/RICA class action against the companies servicing his mortgage. *See Self-Employed Homeowner Class Discriminated Against for Mortg. Modification v. Fay Servicing, LLC*, Misc. Case No. 20–108 (TJK) (D.D.C. 2020).

This substantial history in the District is relevant for two reasons. First, it renders Lillard's (relatively) innocent explanation for his conduct implausible. This was not his first case in a setting where he lacks familiarity. Rather, he has regularly litigated in this District over the past 11 years, apparently without bothering to familiarize himself with the Federal Rules, the

25

Local Rules, or basic principles of federal jurisdiction.  Moreover, he fails to listen when informed of the applicable rules.  As stated above, defendants explained to Lillard why his subpoena was improper, and he did not withdraw it.  *See* Defs.' Letter to John Lillard at 1.  His actions are not those of someone who is merely ignorant of the relevant law—though he surely is—but of someone who does not care what the law is.  This attitude is also reflected in his failure to respond substantively to many of defendants' arguments in their motion to dismiss.  Second, it suggests that stronger sanctions will be necessary to provide the appropriate level of deterrence.  Given that Lillard has repeatedly litigated in this District and in D.C. Superior Court, he plainly does not "[u]nderstand his limitations when it comes to litigation," and his promise to retain competent co-counsel to assist him before refiling *this* action does not assuage the Court's concerns that others might be subject to Lillard's abusive tactics.  *See* Pl.'s Show Cause Resp. at 13.

Lillard argues that referral is inappropriate because "[t]he obligation to report an attorney for discipline arises when the conduct at issue 'raises a *substantial* question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects,'" and such circumstances are not present here.  Pl.'s Show Cause Resp. at 13 (emphasis in original) (quoting D.C. RPC 8.3(a)).  Professional discipline, Lillard argues, is unnecessary to "deter future and similar conduct and protect the public." *Id.* (citing *In re Saint-Louis*, 147 A.3d 1135, 1147 (D.C. 2016); *Attorney Grievance Comm'n of Md. v. McDowell*, 93 A.3d 711, 722 (Md. 2014)).  The Court disagrees.  His "mistakes" may have "harmed no *clients*," *id.* at 13–14 (emphasis added), but they have harmed defendants and have needlessly consumed judicial resources.  Lillard served at least one improper subpoena.  Another recent filing suggests that he may have served improper subpoenas to the other individuals listed in his letter attached to the Triffo subpoena and failed to

withdraw them after the Court stayed discovery.  *See* Pl.'s Periodic Report at 1, ECF No. 24

(stating that "the 84-year-old former [Annapolis mayor] no-showed her duly-subpoenaed zoom

videodep").

Lillard's conduct here, viewed in the broader context of this litigation and his other

actions within this District, raises substantial questions as to Lillard's fitness as a lawyer such

that referral for disciplinary proceedings is appropriate.  Lillard is also admonished for his

actions and directed to pay fees and costs associated with defendants' motion to quash.

### 4.   *Letter to Ron Triffo*

Independent of the other flaws with plaintiff's discovery request, Lillard may have sought

to communicate directly with Stantec instead of its counsel in serving the subpoena and attached

letter.  The subpoena seeking to compel Triffo's testimony was delivered directly to Stantec's

headquarters along with a letter stating that "since [defense counsel] does not represent you,

perhaps you might arrange for another representative to call me to negotiate."  Letter and

Subpoena at 1.  Defendants argued that this was an improper attempt to establish a channel of

communication directly through Stantec.  Defs.' Mem Supp. Mot. to Quash at 6.

If the letter were an attempt—however unlikely to succeed—to get Triffo to encourage

Stantec to negotiate without counsel, it could run afoul of Rule 4.2 of the D.C. Rules of

Professional Conduct, which provides that "a lawyer shall not communicate or cause another to

communicate about the subject of the representation with a person known to be represented by

another lawyer in the matter" without the consent of the lawyer.  D.C. RPC 4.2(a).  Even if

Triffo were himself unrepresented and not a "party" under Rule 4.2(c), the letter could be

interpreted as an improper attempt to "cause another to communicate about the subject of the

representation with a person known to be represented by another lawyer in the matter," D.C.

RPC 4.2(a), if the purpose was to establish, through Triffo, a backchannel of communication to someone who "has the authority to bind an organization as to the representation to which the communication relates," D.C. RPC 4.2(c); *see also* D.C. RPC 8.4 (defining "misconduct" to include an "attempt to violate the Rules").  After all, the express purpose of the letter was to avoid communication through the counsel of record for Stantec in this case.  Letter and Subpoena at 1 ("[S]ince [defense counsel] does not represent you, perhaps you might arrange for another representative to call me to negotiate.").

The Court ordered Lillard to show cause why he should not be referred for professional discipline for violating Rule 4.2(a).  Min. Order (Dec. 28, 2020).  In response to this order to show cause, Lillard argued that the letter did not run afoul of Rule 4.2 because it (1) was not directed at someone represented by counsel, or with the authority to bind a party; (2) complied with Rule 4.2(b) with respect to communications with a nonparty employee of a represented party; and (3) was not intended to cause Triffo "to communicate with Stantec directly, behind Stantec's lawyers backs[, but rather to] encourage Mr. Triffo to engage counsel who might communicate with Stantec's counsel regarding Plaintiffs desire to attempt to negotiate a settlement of this matter."  Pl.'s Show Cause Resp. at 11–13; *see also* Lillard Decl. ¶ 17 ("I presumed that Mr. Triffo's counsel would, consistent with Rule 4.2, communicate with Stantec through Stantec's counsel.").  In this reading of the letter, the "representative" Lillard hoped would communicate with him would be *other* counsel for Stantec rather than its counsel of record in this matter.  This explanation will suffice for Lillard to avoid referral for discipline on this ground.

***

Plaintiff's and defendants' motions for sanctions are denied.  For the reasons outlined above, however, Lillard's conduct in this case raises sufficient concern to warrant sanctions and referral to and review by the D.C. Bar and the Maryland Bar, as well as this Court's Committee on Grievances, for any action that may be deemed appropriate.

## IV.    CONCLUSION

This case is dismissed, without prejudice, in light of plaintiff's notice of voluntary dismissal.  Defendants' motion to dismiss and motions to strike are denied as moot. Plaintiff's motion for sanctions is denied.  Defendants' motion for sanctions based on plaintiff's proposed order attached to the complaint is denied.

Plaintiff's counsel John F. Lillard, III, is sanctioned pursuant to Rules 11(c)(1) and 26(g)(3) of the Federal Rules of Civil Procedure for his improper filing of a motion for sanctions without legal authority and for his improper serving of a pre-discovery subpoena compelling attendance at a deposition, which he failed to withdraw despite notice of its impropriety.  Lillard is admonished for these violations and directed to pay costs and attorney's fees associated with defendants' motion to quash. Defendants shall submit an itemized billing statement of fees and expenses associated with the motion to quash by January 15, 2021, and Lillard shall submit by January 29, 2021, notice of whether those fees and expenses have been paid or are contested in any way.

The Clerk of the Court is directed to send a copy of this Memorandum Opinion to this Court's Committee on Grievances and the bars of District of Columbia and Maryland for whatever action, if any, is deemed appropriate based on the conduct of plaintiff's counsel, John F. Lillard III, in this litigation, as described in the Memorandum Opinion.

An order consistent with this Memorandum Opinion will be entered contemporaneously.

Date:  January 8, 2021

_____
BERYL A. HOWELL
Chief Judge